THOMAS KELLY, Respondent, *v.* DAVID TILTON, Appellant.

A person who keeps a mischievous or dangerous animal, with knowledge
of its propensities, is bound to keep it secure, at his peril.
When a person is lawfully on land by a license from the owner, and he
invites a stranger in for a lawful purpose, such stranger is not a trespasser.

APPEAL from judgment of Supreme Court affirming a
judgment of the Brooklyn City Court.

This action was brought by the plaintiff to recover dam-
ages on account of being bitten by a dog kept by the defend-
ant, accustomed to bite mankind; which dog did, on the 21st
March, 1859, bite the plaintiff, to his damage.

The cause was tried in the City Court of Brooklyn, in
March, 1860. On the trial it appeared that the parties were
residents of the city of Brooklyn. The plaintiff was a junk
dealer, and the defendant was in the poultry business, having
an inclosed poultry yard, in which he killed poultry for
market. The defendant kept a large Newfoundland dog,
and had for two or three years previously to March, 1859.
This dog was kept usually chained on defendant's premises,
but was sometimes loose about the yard and in the streets.
The vicious character of the animal was clearly established,
and, also, that the defendant had knowledge of it. Two
witnesses, on the part of the plaintiff, testified to having been
bitten by him, and to having brought home the knowledge
of the fact to the defendant. In another case he had bitten
a person by the name of Drew, and the defendant himself
said that Drew had threatened to sue him, and had threat-
ened to shoot the dog. To one person the defendant said
he was going to get a stronger chain and collar for him, and
to another that he was going to get rid of him; and he
charged a hired man of his to keep out of his way until he
got acquainted with him.

On the 21st March, 1859, the defendant had on his prem-
ises a quantity of old iron. He directed his hired man
Barnes, and Silas Pearsall, a member of his family, to sell, or
find a customer for, that iron. On the 21st March the

defendant was away in the morning, and Barnes and the defendant's step-son, Silas Pearsal, were in charge of the premises. About ten o'clock in the morning the plaintiff, who was an old iron or junk dealer, was passing along the street with his wagon, and the boy Silas seeing him, took him in upon the premises to see the iron. The plaintiff bought the iron — about 250 pounds — and turned to go to the street to bring in his horse and wagon to carry the iron away; and on his way to the gate the defendant's dog sprang out of his house, which was about 100 feet from the gate, broke the leather collar by which he was fastened, and bit the plaintiff's hand; at this time the plaintiff was some six or seven yards from the dog-house. The dog's collar, according to the testimony of Barnes and the plaintiff, was old and worn. The plaintiff testified that he had nothing on his part or did nothing to provoke the dog. The boy Silas got hold of the dog and took him away. The plaintiff then went to a drug-gist and had the hand dressed. After the hand was dressed he came back and took away a part of the iron, and came the next day and took the remainder away. Barnes afterward told the defendant about the sale of the iron to the plaintiff and he made no objection.

Evidence was given by plaintiff showing that the hand bitten was very painful and sore for three weeks; that two of the fingers were bitten clear through; that the strength of the hand is greatly impaired; that the plaintiff spent $30.75 in attempting to cure it; that he could not use his hand for a month or two, during which time he was obliged to employ help in carrying on his business.

On the trial, the plaintiff was examined himself as a witness. He testified that on the 21st March he was going around collecting junk; that as he was passing by the defendant's gate, a boy called him. [The defendant's counsel here objected to witness giving any statements of the boy. Objection overruled. Exception taken and noted.] The witness then went on—the boy asked me if I bought old iron, etc. This question was put to the same witness: Q. Have you been obliged since the injury to employ more help than

you did before, in consequence of the injury? [Objected to by defendant's counsel. Objection overruled. Exception taken and noted.] A. I have according as I have heavy lifts.

When the plaintiff rested, the defendant's counsel moved for a nonsuit upon the grounds:

1. That the man Barnes had exceeded his authority in bringing the plaintiff on defendant's premises, or in allowing him to come in to buy the iron, or in selling the iron to him on the premises. Barnes having no authority to bring the plaintiff upon the premises, it must be regarded in the same light as if the plaintiff had gone there on his own motion, and without the knowledge of the defendant, and was, therefore, a trespasser. Being a trespasser, he took the risk of any and all accidents or injuries that should occur to him while on said premises.

2. That the plaintiff was negligent in going so near to the dog. The fact of the dog being chained was notice to the defendant to keep out of his way, and he should have kept as far from him as possible; and that it was his own negligence, solely, that produced the injury.

The judge denied the motion, and the defendant's counsel excepted. Some evidence was then given by the defendant as to the situation of his premises, and as to the character of the dog, when he rested.

The judge, after stating to the jury the issues presented by the pleading, charged them in substance as follows: That in considering the evidence, they might well consider, first, did the defendant keep a ferocious dog, knowing him to be accustomed to bite mankind? If so, second, did such dog, while in the keeping of the defendant, bite the plaintiff? Third, was the plaintiff at the time of the biting, trespassing on the premises, or did he provoke the dog to bite him? Fourth, was the plaintiff bitten through his own negligence, and not by the fault of the defendant?

If the first two propositions are to be answered in the affirmative, and the last two in the negative, then plaintiff should recover, and you will then have to consider the damages; but if either the plaintiff was trespassing on the

defendant's premises, or if he provoked the dog, or if he was bitten through his own negligence, either of them is a defense to the action, and he is not entitled to recover.

An owner who keeps a dog knowing him to be accustomed to bite mankind, keeps him at his peril; if the dog bites a man, the owner is *prima facie* liable, unless he can show that he had, the dog securely fastened, and used all reasonable diligence to keep him so; or that the person bitten was a trespasser or provoked the dog to bite him; or that his negligence in some way contributed to the injury.

If the jury believes, from the testimony, that Barnes and the boy Silas, by authority of the defendant, invited the plaintiff on the premises, then the plaintiff was not a trespasser. But if the defendant gave Barnes and his boy Silas, no authority to invite the plaintiff in the defendant's yard, the defendant is not liable, unless he subsequently confirmed their acts. If the plaintiff is entitled to recover, he is not entitled to recover exemplary or vindictive damages, but only the actual damage sustained; and in ascertaining such actual damage, the jury might take into consideration the plaintiff's expenses in curing the hand, his loss of time consequent upon the injury, his inability to transact his business arising therefrom, and also the bodily pain and suffering consequent from the injury.

The defendant's counsel excepted to so much of the charge as allowed the jury to take into consideration the bodily pain and suffering of the plaintiff. The defendant's counsel asked the court to charge a number of propositions, among which were the following:

1. That the witness Barnes, or the step-son of the defendant, were not the agents of defendant to invite plaintiff upon the premises of the defendant, and the plaintiff being upon the defendant's premises, he was a trespasser, and cannot maintain the action.

2. That the defendant had a right, lawfully, to keep a dog for the protection of his poultry yard, provided he, in the day-time, keeps him properly secured.

3. That if the jury believe that the dog was reasonably

secured, and he broke his fastening by reason of any act of the plaintiff, he cannot recover.

4. That if the jury believe, from the evidence that there was sufficient room for plaintiff to pass out without coming within reach of the dog, the fact of the dog being chained was sufficient notice to the plaintiff not to approach too near to the dog, and if he was injured by coming within reach of the dog, defendant is not liable.

5. That in actions of this character, before the plaintiff can recover, he must show himself without fault, and that no act of his which he could have avoided with the exercise of reasonable care or prudence, produced or contributed to the accident.

6. That every man has a right to keep a dog for the protection of his property, and if the injury complained of arose from the plaintiff's own fault in going into defendant's yard, no action will lie.

7. That a party being bitten by a dog in consequence of going on the owner's land, when he is not entitled to go, cannot maintain the action.

8. That the mere fact of the dog's being chained to his house or kennel, was notice to the plaintiff that he must not approach the dog.

9. That the fact that this was a place of particular business, and the dog being chained, was notice to the plaintiff not to approach the dog.

10. That if the jury believe that there were facts sufficient to amount to notice of the character of the dog, the plaintiff approached at his peril.

The court refused to charge other or further than already charged. To which refusal the defendant's counsel excepted.

The jury found a verdict for the plaintiff, for $486.75.

The defendant appealed from the judgment entered on the verdict, to the Supreme Court, when the judgment was affirmed. He now appeals to this court.

*J. H. Reynolds*, for the plaintiff.

*R. M. Harrington*, for the defendant.

WRIGHT, J. The action was to recover for injury sustained by being bitten by a dog kept by the defendant. The facts were these, in substance: The defendant was in the poultry business, in Brooklyn, in March, 1859, and had been, for several years previously. He had a yard which he used for killing poultry and preparing it for shipping. He owned a dog, which he kept upon his premises. His kennel was some one hundred feet from the entrance gate of the yard, and he was usually fastened thereto by a chain and leather collar, except at nights and upon Sundays. The ferocity of this animal, his habit of attacking and biting people, and the defendant's knowledge of his mischievous propensities, fully appeared from the evidence. On two occasions, in 1858, he had bitten persons visiting the defendant's premises on business; and, at another time, a person in the employ of the defendant; of all of which occurrences, the defendant had, notice. As late as March, 1859, he cautioned one of his men that he had just taken into his employ, to keep out of his way until he got acquainted with him. In short, the vicious character of the animal, and that the defendant had knowledge of it, were scarcely disputed questions on the trial. In March, 1859, there was a quantity of old iron, scattered about and in a pile, in the rear part of the defendant's yard. Just prior to the 21st March, with the view, probably, of getting it out of the way, he told one of his employees, by the name of Barnes, and a lad named Pearsall, his step-son and a member of his family, to sell or find a customer for the iron. On the 21st March the defendant was absent, and the yard was in the charge of Barnes and the defendant's step-son. About 10 o'clock in the morning, the plaintiff, who was a junk dealer, was passing along the street with his wagon, and the boy, seeing him, came out, and took him in upon the premises to the iron. The plaintiff bought the iron, and turned to go to the street to bring in his horse and wagon to take a part of it away. As he was going out, the defendant's dog sprang out of his house, broke his leather collar, which there was evidence tending to show was old and worn, and bit the plaintiff's hand. At this moment the plaintiff was

some twenty feet from the dog-house, and going in a straight direction from where the iron lay to the gate. It was the left hand that was bitten, and the bite was of a severe character. Two of the fingers were bitten, apparently, clear through, and for some three weeks the hand was exceedingly painful and sore, the plaintiff being unable to use it at all in his business. He was obliged to employ help in carrying on his business, spent some thirty dollars in attempting to cure it, and there was evidence that its strength was permanently impaired. After the bite, and the hand had been dressed by a druggist near by, the plaintiff returned and took part of the iron away. The next day he came again and took the rest of it away. Afterward, Barnes informed the defendant of the sale of the iron to the plaintiff, and he made no objection.

Upon this state of facts, substantially, and under a charge of the court, to which no exception was taken, save in a single particular, in respect to the rule of damages (which exception seems now to be abandoned, as untenable), the plaintiff had a verdict. There was, however, a motion for a nonsuit (though made on specific grounds that may raise the general question whether the defendant, under the circumstances, was liable to answer in damages to the plaintiff).

I am of the opinion that, on this point, there is no error in the judgment. The vicious character of the dog, and the defendant's knowledge of his dangerous habits, were matters admitting of no dispute. A person, keeping a dog, knowing him to be accustomed to bite mankind, keeps him at his peril. Whoever, say the court, in *May* v. *Burdett* (9 Adol. & Ellis [N. S.] 101), keeps an animal accustomed to attack and bite mankind, with knowledge that it is so accustomed, is, *prima facie*, liable in an action on the case, at the suit of any person attacked and injured by the animal, without any averment of negligence or default in the securing or taking care of it. The gist of the action is the keeping of the animal, with knowledge of its mischievous propensities. (*Smith* v. *Pelah*, 2 Strange, 1264; *Card* v. *Carr*, 57 Eng. Com. Law, 622.) It is no defense, in such a case, that the animal is safely kept, nor do I think it a defense that the

party injured is a trespasser. In the case of a dog of that character, it is the duty of the owner, having notice of his dangerous habits, to kill him. (*Smith* v. *Pelah*, *supra*; *Bolton* v. *Banks*, Cro. Ch. 254; *Jenkins* v. *Turner*, Ld. Raym. 110.) In *Smith* v. *Pelah*, the chief justice ruled, " that, if a dog has once bit a man, and the owner, having notice thereof, 'keeps 'the dog and lets him go about or lie at his door, an action will lie against him at the suit of a person treading on the dog's toes; for it was owing to his not hanging the dog at the first notice; and the safety of the king's subjects ought not afterward to be endangered. The *scienter* is the gist of the action." It is held, in the case of *Loomis* v. *Terry* (17 Wend. 496), that a man may keep such a dog for the protection of his property in the night against felons; but this seems opposed to all the other cases, which hold that such an animal is a nuisance. But, be this as it may, if a person will keep a mischievous animal, with knowledge of its propensities, he is bound to keep it secure at his peril. (*May* v. *Burdett*, 58 Eng. Com. Law, 99; *Jackson* v. *Smith*, 15 Mees. & Wels. 563; *Card* v. *Case*, *supra*.) It is not necessary, however, to deny, in this case, that it would be a good defense if the dog were safely and securely fastened. The judge charged the jury, that, if the dog was securely fastened, that was a good defense. There was evidence that the dog was not securely fastened; and the jury, by finding for the plaintiff, say that he was not. It may be admitted, also, that trespass is a good defense; and still, I think, there was no error. The plaintiff was not a trespasser. Conceding that Barnes and the boy Silas Pearsall had no authority to invite the plaintiff in, with the view of finding a purchaser for the iron that the defendant had directed them to sell, it is undisputed that they were lawfully on defendant's premises, by license from the defendant. When a person is lawfully on land, by license from the owner, and he invites a stranger in for a lawful purpose, such stranger is not a trespasser.

The two exceptions taken on the trial, I deem to be untenable. The judgment should be affirmed.

All the judges concurring,     Judgment affirmed.